# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Chapter 11** |
| **AIG BAKER DEPTFORD, L.L.C.** | ) | |
| | ) | **Case No. 10-02059-TBB-11** |
| Debtor. | ) | |
| | ) | |
| | ) | |

**OBJECTION OF PNC BANK, NATIONAL ASSOCIATION, INDIVIDUALLY AND AS ADMINISTRATIVE AGENT FOR PNC BANK, NATIONAL ASSOCIATION AND REGIONS BANK, AND OF REGIONS BANK, INDIVIDUALLY, TO THE DEBTOR'S MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(A), 361, 363, 541, AND 542 OF THE BANKRUPTCY CODE (I) DETERMINING THAT RENTS GENERATED FROM THE DEBTOR'S PROPERTY CONSTITUTE CASH COLLATERAL, (II) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL IN THE ORDINARY COURSE OF BUSINESS, (III) IF NECESSARY, GRANTING ALTERNATIVE RELIEF, AND (IV) SCHEDULING A FINAL HEARING**

PNC Bank, National Association (the "Agent"), individually and as Administrative Agent for PNC Bank, National Association and Regions Bank (collectively, the "Banks"), by and through its attorneys, McCarter & English, LLP, and Regions Bank, ("Regions"), individually, by and through its attorneys, Bradley Arant Boult Cummings LLP, hereby object to the Debtor's Motion for an Order Pursuant to Sections 105(a), 361, 363, 541, and 542 of the Bankruptcy Code (I) Determining that Rents Generated from the Debtor's Property Constitute Cash Collateral, (II) Authorizing the Debtor to Use Cash Collateral in the Ordinary Course of Business, (III) If Necessary, Granting Alternative Relief, and (IV) Scheduling a Final Hearing (the "Motion") and in support of this objection state:

## PRELIMINARY STATEMENT

1. The Agent and Regions object to the Debtor's efforts to utilize Rents (as defined below) owned by the Agent as if they were cash collateral. The Rents at issue were assigned to

the Agent pursuant to agreements that are absolute assignments under New Jersey law, where the Mortgaged Premises (as defined below) generating the Rents is located. In addition, the Agent exercised its rights under the Assignments of Rents (as defined below) and has been collecting the Rents directly from the tenants for almost a year. The Debtor retains no interest in the Rents, and they are not property of the estate. The Motion should therefore be denied.

2. The Debtor borrowed $40,868,956 from the Banks. To ensure repayment, the Debtor executed a security agreement and mortgages on the Mortgaged Premises, a shopping center, and assigned the Rents generated by the real property to the Agent, for itself and as administrative agent for the Banks pursuant to Assignments of Rents. The Mortgages (as defined below) and Assignments of Rents were all recorded in the county where the Mortgaged Premises is located in New Jersey and all provide that New Jersey law applies. The Assignments of Rents transferred ownership of the Rents to the Agent and, under New Jersey law, granted the Debtor a license to use the Rents, contingent upon compliance with the Loan Documents.

3. In February, 2009, the Debtor fell into arrears on its mortgage payments. In March, 2009, the Agent notified the Debtor that the failure to cure would constitute an Event of Default. When the Borrower failed to cure, the Agent exercised its rights under the Assignments of Rents and notified the tenants that future Rents should be directed to the Agent. Thereafter, the Agent commenced collecting Rents directly from the tenants.

4. The Debtor continued in default and, in August, 2009, entered into a Forbearance Agreement with the Agent. Pursuant to the Forbearance Agreement, the Debtor agreed that the Agent was properly collecting the Rents, that continued collection was proper and that the Rents would be deposited into an account in the Agent's name consistent with the Agent's ownership of the Rents. The Debtor also agreed that its collection of Rents was improper.

2

5.   The Forbearance Agreement expired on the scheduled maturity date of November 14, 2009, and all sums became due.  The Debtor failed to pay the Loans.  The Loans remain matured and unpaid.  The tenants continue to forward their monthly rental payments directly to the Agent, where they are deposited into an account in the name of the Agent.  The Agent has continued to fund the expenses on the property.

6.   The real property generating the Rents is located in New Jersey and the Loan Documents (as defined below) provide that New Jersey law applies.  Under New Jersey law, the Assignments of Rents are absolute assignments of Rents pursuant to which the Debtor transferred its rights in the leases and Rents to the Agent and the Agent granted the Debtor a license to collect the Rents.  That license terminated upon default.  The Debtor lost any rights to the Rents at that time, and they are therefore not property of the Debtor or property of the Debtor's estate.

7.   Following default, the Agent exercised its rights under the assignments and notified the tenants.  From May 2009 through the present, the tenants have been directing their rent payments to the Agent.  To the extent the Debtor retained any rights after default, those rights terminated when the Agent notified the Tenants and began collecting Rents directly.

8.   The Debtor has no interest in the Rents; they belong to the Agent.  They are collected by the Agent and reside in an account in the Agent's name.  These funds are not property of the estate and accordingly there is no authority for the Debtor to use them, as cash collateral or otherwise.  The Motion should be denied.

ME1 9795075v.1

# BACKGROUND

## The Loans

9.   On November 14, 2006, the Banks made certain loans to AIG Baker Deptford, L.L.C. (the "Debtor") pursuant to a $38,867,862.00 Construction Loan Agreement dated November 14, 2006 (the "First Agreement"), which is evidenced by, inter alia, a Mortgage Note in the original principal amount of $23,867,862 dated November 14, 2006, ("Note-1") and a Mortgage Note in the original principal amount of $15,000,000 dated November 14, 2006 ("Note-2").  See Pascarella Affidavit, ¶2, Exhibits A through C.

10. On August 13, 2008, the Banks made certain loans to the Debtor pursuant to a $2,001,094.00 Construction Loan Agreement dated August 13, 2008 (the "Second Agreement", and together with the First Agreement, the "Construction Loan Agreements"), which is evidenced by, inter alia, a Mortgage Note in the original principal amount of $1,228,831.80 dated August 13, 2008, ("Note-3") and a Mortgage Note in the original principal amount of $772,262.20 dated August 13, 2008 ("Note-4", collectively, with Note-1, Note-2 and Note-3, the "Notes").  See Pascarella Affidavit, ¶3, Exhibits D through F.  The Construction Loan Agreements and the Notes provide that they shall be governed by, construed and enforced in accordance with the laws of the State of New Jersey.  See Pascarella Affidavit, Exhibit A, Section 11.8; Exhibit B, p 3, Exhibit C, p. 3, Exhibit D, Section 11.8, Exhibit E, p. 3, and Exhibit F, p. 3.

11. To secure repayment of the Notes, the Debtor executed a Mortgage and Security Agreement dated November 14, 2006, in favor of PNC Bank, National Association, as Administrative Agent ("PNC" or the "Agent") ("Mortgage-1") on real property located at 2000 Clements Bridge Road, Deptford, Gloucester County, New Jersey (the "Mortgaged Premises")

ME1 9795075v.1

and a Mortgage and Security Agreement dated August 13, 2008, in favor of the Agent ("Mortgage-2" and together with Mortgage-1, the "Mortgages") . See Pascarella Affidavit, ¶4 & 5, Exhibit G & H.

12. By the terms of the Mortgages, the Debtor granted the Agent a security interest in certain personalty including "all rents, leases, and profits" described therein (collectively, the "Collateral"). To perfect its interest in the Collateral, the Agent recorded UCC-1 Financing Statements on January 30, 2007, with the Delaware Secretary of State as File Number 70418334 and on November 16, 2006, with the Gloucester County Clerk, File No. 50871. See Pascarella Affidavit, ¶5.

13. On November 14, 2006, the Debtor executed an Assignment of Rents, Leases and Profits ("Assignment of Rents-1") in favor of the Agent assigning and transferring to the Agent all of the Debtor's right, title and interest in and to all leases and similar arrangements encumbering the Mortgaged Premises, including the right to collect all rents, income and profits generated thereby (the "Rents"). On August 13, 2008, the Debtor executed an Assignment of Rents, Leases and Profits ("Assignment of Rents-2", and together with Assignment of Rents-1, the "Assignments of Rents", and together with the Notes, the Construction Loan Agreements, and the Mortgages, the "Loan Documents") in favor of the Agent assigning and transferring to the Agent all of the Debtor's right, title and interest in and to the Rents. See Pascarella Affidavit, ¶6 & 7, Exhibits I & J.

**The Assignments of Rents**

14. The Assignments of Rents transferred to the Agent all of the Debtor's right, title and interest in and to the Leases, all of the Rents and constitutes a present absolute and unconditional

assignment from the Debtor to the Agent, and not merely the granting of a security interest.  See

Pascarella Affidavit, ¶6 & 7, <u>Exhibits I & J</u>.

       15. The Assignments of Rents specifically provide as follows:

       NOW, THEREFORE, in consideration of the extension of credit under the Loan Documents and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Assignor hereby assigns, transfers and sets over to the Assignee, as security for the payment of the Obligations and the observance and performance of all the terms, covenants and provisions of the Loan Documents, the Mortgage and this Assignment, all of the Assignor's right, title and interest in and to the Leases, all of the rents, additional rents, charges, issues, profits and other payments for the use or occupancy of the Premises payable under the Leases (which are now in existence or which may hereafter be executed during the term hereof) and all cash or other property deposited by tenants to secure performance of their obligations under the Leases, including, without limitation, …to perform all other necessary or appropriate acts with respect to such Leases as agent and attorney-in-fact for Assignor,…, and to do any and all other things whatsoever which the Assignor is or may become entitled to do under any such Lease all from the date hereof to the end of the respective terms of the Leases and any renewals and extensions thereof, and in all cases both before and after the commencement by or against the Assignor of any case or proceeding under any Federal or State bankruptcy, insolvency or similar law (collectively, the "Rents"). ***This Assignment is a present absolute and unconditional assignment from the Assignor to the Assignee and not merely the granting of a security interest.***

\* \* \*

      ***Upon the occurrence of an Event of Default under the Note, the Mortgage or any of the other Loan Documents, the right and license granted to the Assignor in this Assignment shall be automatically revoked without any notice or further action whatsoever*** and the Assignee, at its option, shall have the complete right, power and authority (a) without taking possession, to demand, collect and receive and sue for the Rents and other sums payable under the Leases and, after deducting all reasonable costs and expenses of collection (including, without limitation, reasonable attorneys' fees) as determined by the Assignee, apply the net proceeds thereof to the payment of any indebtedness secured hereby;…The Assignee may retain and apply the Rents toward payment of the Obligations in such priority and proportions as the Assignee, in its sole discretion, shall deem proper.

<u>See</u> Pascarella Affidavit, <u>Exhibits I & J</u>, p. 1, 2 and 3 (emphasis added).

ME1 9795075v.1

16. Further, the Mortgages specifically express the Debtor's absolute assignment of the rents as follows:

> The Mortgagor for good and valuable consideration, receipt of which is hereby acknowledged, intending to be legally bound hereby, does hereby give, grant, bargain, sell, convey, assign, transfer, mortgage, hypothecate, pledge, set over and confirm unto the Mortgagee and does agree that the Mortgagee shall have a security interest in the following described property (and the property described in Paragraph 18 herein), all accessions and additions thereto, all substitutions therefor and replacements and proceeds thereof, and all reversions and remainders of such property now owned or held or hereafter acquired (the "Property"), to wit:…(d) All rents, issues and profits arising or issuing from the Land and the Improvements (the "Rents") including the Rents arising or issuing from all leases, licenses subleases or any other use or occupancy agreement now or hereafter entered into covering all or any part of the Land and Improvements (the "Leases"), all of which Leases and Rents are hereby assigned to the Mortgagee by the Mortgagor. ***The foregoing assignment shall be an absolute assignment of all of the Mortgagor's entire interest in the Rents. The foregoing assignment extends to Rents arising both before and after the commencement by or against the Mortgagor of any case or proceeding under any Federal or State bankruptcy, insolvency or similar law, and is intended as an absolute assignment and not merely the granting of a security interest***. The Mortgagor, however, shall have a license to collect, retain and use the Rents so long as no Event of Default shall have occurred and be continuing or shall exist. The Mortgagor will execute and deliver to the Mortgagee, on demand, such additional assignments and instruments as the Mortgagee may require to confirm, maintain and continue the assignment of Rents hereunder;

See Pascarella Affidavit, Exhibits G & H, Page 3 part (d) and Section 12(d) (emphasis added).

## **The Defaults**

17. The Debtor failed to meet its obligations under the Loan Documents by, inter alia: failing to timely make payments due pursuant to Section 3.8 of the Construction Loan Agreements in February, March, April, May, June, and July of 2009; in permitting construction liens to be filed against the Mortgaged Premises in violation of Section 10.1(j) of the Construction Loan Agreements; and failing to discharge, vacate or bond any construction lien within ten (10) days after the filing thereof, pursuant to Section 10.1(j) of the Construction Loan Agreements (collectively, the "Events of Default"). See Pascarella Affidavit, ¶9.

ME1 9795075v.1

18. By letter dated March 10, 2009, the Agent notified the Debtor that, if default was not cured in five (5) days, all sums due under the Notes were immediately due and payable. The defaults were not cured within that time frame and became Events of Default. See Pascarella Affidavit, ¶10, Exhibit K.

19. By letter dated March 18, 2009, the Agent notified the Debtor that by reason of the Events of Default, all sums outstanding under the Loan Documents were immediately due and payable. Despite demand for payment and acceleration, the Debtor failed to pay all sums due under the Notes. See Pascarella Affidavit, ¶11, Exhibit L.

**The Agents' Exercise of Rights Under the Assignments of Rents**

20. By letter to the Debtor's tenants dated May 13, 2009, the Agent gave notice to the tenants of the Agent's entitlement to the Rents (the "Letter to Tenants"). The Letter to Tenants notified the Debtor's tenants to direct and pay Rents to the Agent. The Agent commenced collecting Rents and depositing them into an account at the Agent owned and maintained by the Agent on behalf of the Banks. See Pascarella Affidavit, ¶12, Exhibit M.

21. When the Agent discovered that the Debtor was continuing to collect Rents from some Tenants, the Agent sent a letter on July 2, 2009 again making demand upon the Debtor for the immediate turnover to the Agent of all Rents related to the Mortgaged Premises received by or in the possession of the Debtor since May 13, 2009. See Pascarella Affidavit, ¶15, Exhibit N.

**The Forbearance Agreement**

22. The Debtor and the Agent then entered into a Forbearance Agreement dated August 2009. The Debtor agreed in the Forbearance Agreement that the law of the State of New Jersey would govern the agreement. See Pascarella Affidavit, Exhibit O, Section 10.3. Pursuant to the Forbearance Agreement and the Loan Documents, the Debtor was required to pay the Loan in

8

full on or before November 14, 2009 (the "Maturity Date"). See Pascarella Affidavit, ¶16 & 17, Exhibit O.

23. In Section 5.2 of the Forbearance Agreement, the Debtor acknowledged and agreed that the Agent owned the Rents and would properly continue to collect them, as follows:

> Until the Loan is repaid, the rents shall continue to be delivered to the Agent , as set forth in the Notices Regarding Rental Payments to the tenants. The Agent shall deposit all such funds received from Tenants into an account at the Agent owned and maintained by the Agent on behalf of the Banks (the "Lockbox Account"). Borrower hereby acknowledges and agrees that any attempt by Borrower to direct any of the Borrower's Accounts to any location other than the Lockbox Account shall be a express violation of this Agreement and an immediate Event of Default, would cause irreparable harm to the Banks for which there would be no adequate remedy at law, and agrees and consents to entry of an order by a court of competent jurisdiction (including a Bankruptcy Court) granting the Agent on behalf of the Banks specific performance of the terms and provisions of this Agreement.

See Pascarella Affidavit, Exhibit O, Section 5.2. The Notices Regarding Rental Payments each enclosed and referenced the Assignments of Rents establishing the Agent's ownership rights in the Rents. Additionally, in Section 5.18, the Debtors acknowledged that its collection and retention of Rents was improper, as follows:

> (i) The parties acknowledge that, as set forth in Section 2(a) above, the Agent has been properly collecting rental payments for the Real Property pursuant to the Assignments of Rents, but that all rental payments from all tenants have not been received.

> (ii) The Borrower acknowledges that it has been collecting rental payments from May 13, 2009 to present in violation of the Agent's rights under the Assignment of Rents. Borrower represents and warrants that it has collected $396,337 in rental payments since May 13, 2009.

See Pascarella Affidavit, Exhibit O, Section 5.18.

24. The Debtor failed to pay the outstanding principal balance of the Loan and all unpaid interest accrued on the Loan and all other sums then owing under the Loan Documents in full on the Maturity Date. See Pascarella Affidavit, ¶18.

ME1 9795075v.1

Case 10-02059-TBB11    Doc 21    Filed 04/05/10    Entered 04/05/10 21:01:38    Desc Main
Document      Page 9 of 22

25. By letter dated November 17, 2009, the Agent notified the Debtor that the Loans had matured, the Debtor had not paid, and demanded payment. The Debtor failed to pay the sums due under the Notes and Loan Agreements. No action was taken by the Debtor to address the maturity. <u>See</u> Pascarella Affidavit, ¶20.

26. Following the Maturity Date, the Agent continued to pay the expenses associated with the property on a monthly basis. Because the Forbearance Agreement had expired, however, the Agent refused to continue to allow any of the Rents to be paid or distributed to the Debtor, except as required for identified and approved operating expenses. <u>See</u> Pascarella Affidavit, ¶21.

27. On January 22, 2010, the Agent filed a Complaint with the Foreclosure Unit of the Superior Court of New Jersey, Docket No. GLO F-04241-10 and a Law Division Complaint with the Superior Court of New Jersey, Gloucester County, Docket No. GLO L-00160-10. <u>See</u> Pascarella Affidavit, ¶22.

28. Despite the filing of these complaints, the Agent, without waiving any rights and remedies under the Loan Documents, continued to fund the Operating Account to pay for the operating expenses of the Debtor. <u>See</u> Pascarella Affidavit, ¶23.

<u>**ARGUMENT**</u>

I. <u>**ALL RENTS GENERATED FROM THE MORTGAGED PREMISES HAVE BEEN UNCONDITIONALLY AND ABSOLUTELY ASSIGNED TO THE AGENT AND ARE NOT PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE**</u>

29. In order for a debtor in bankruptcy to be permitted to use cash collateral pursuant to 11 U.S.C. § 363, the estate must have an interest in the proceeds at issue such that it meets the

ME1 9795075v.1

definition of "cash collateral." 11 U.S.C. § 363(a)[1]. The Debtor has no interest in the Rents from the Mortgaged Premises under controlling law.

30. "Assignments of rents are interests in real property and, as such, are created and defined in accordance with the law of the situs of the real property." Butner v. United States, 440 U.S. 48, 55 (1979); Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 37 (3d Cir. 1993); see also In the Matter of Vill. Prop., Ltd., 723 F.2d 441, 442 (5th Cir. 1984); In re Turtle Creek, Ltd., 194 B.R. 267, 276 (Bankr. N.D. Ala. 1996). The situs of the Mortgaged Premises is the State of New Jersey in Deptford where the shopping center is located. Accordingly, the Assignments of Rents were created and are to be defined, construed and applied in accordance with the law of the State of New Jersey. See Butner v. United States, 440 U.S. 48, 55 (1979); Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 37 (3d Cir. 1993); see also In the Matter of Vill. Prop., Ltd., 723 F.2d 441, 442 (5th Cir. 1984).

31. The law of the State of New Jersey is clear that a Debtor that executes an absolute assignment transfers and forfeits all rights in the property[2]. Whether an assignment document is an absolute assignment or a security agreement turns on the language of the document itself. See In Paramount Building & Loan v. Sacks, 107 N.J. Eq. 328 (Chan. 1930); Stanton v. Metropolitan Lumber Co., 107 N.J. Eq. 345 (Ch. Div. 1930); New Jersey National Bank v. Wolf, 108 N.J. Eq. 412 (Chan. 1931).

---

[1] (a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired *in which the estate* and an entity other than the estate *have an interest* and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title [11 USCS § 552(b)], whether existing before or after the commencement of a case under this title. 11 U.S.C. §363(a) (emphasis added).

[2] A recent decision in this Court, which was affirmed on appeal, reaches the same result applying Alabama law. See In re Robert E. Wright, Sr., Case No. 05-42859-TBB7, Docket No. 74 (Bankr. N.D. Ala. Dec. 20, 2005), aff'd, Robert E. Wright, Sr. V. Regions Bank, Case No. 1:06-cv-00518-JFG, Docket No. 10 (N.D. Ala. May 16, 2006).

11

32. In Paramount Building and Loan, supra, three mortgagees sought entitlement to rents that accrued post-default. The Court noted the distinction between a pledge of rents, where the mortgagee is required to take possession as a condition of entitlement, and an assignment of rents, where possession is not necessary. In enforcing the written agreement between the parties, the court held that "by assignment, title [to the rents] is transferred although possession need not be." Id. at 332.

33. Similarly, in Stanton v. Metropolitan Lumber Co., 107 N.J. Eq. 345 (Ch. Div. 1930), the Court noted that rents belonged to an assignee under an assignment of rents, and title to the rents passed to the assignee in accordance with the written documents. As clearly stated by the Court, "[a]s the rent accrued, after the default, the ownership was in the assignee ...". Id. at 348. In Stanton, language that the rents were "assigned" was sufficient to create an absolute assignment, as distinguished from a collateral or conditional assignment.

34. Finally, the Court in New Jersey National Bank v. Wolf, 108 N.J. Eq. 412 (Ch. Div. 1931) construed language in an assignment that the rents are "hereby assigned" to find that the assignment was absolute and the mortgagee was entitled to the rental revenue immediately upon default.

35. The law has been expressly acknowledged and confirmed by the highest court of state of New Jersey. "Under an absolute assignment of rents provision, title to the rents passes to the assignee upon default." Metlife Capital Financing Corp. v. Washington Ave. Associates, L.P., 159 N.J. 484, 503 (1999); International Business Machines Corporation vs. Axinn, 290 N.J. Super. 564, 568 (App. Div. 1996)( an assignee's right to receive rents upon default, under an

12

assignment of leases and rents, was entirely independent and in addition to the assignee's option to take possession of the subject property).

36. The Third Circuit has expressly acknowledged and relied on the law set forth above in construing assignments of rents to determine whether the rents are considered part of the debtor's estate, and thus available cash collateral.  In re Jason Realty, L.P., 59 F.3d 423 (3d Cir. 1995)[3].  Rents that have been assigned pursuant to an assignment of rents that states it is an absolute assignment are not considered property of the debtor's estate pursuant to New Jersey law; such funds are thus not available as either cash collateral or as a funding source for the debtor's reorganization plan.  Jason Realty, 59 F.3d 423; Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34 (3d Cir. 1993).

37. In Jason Realty, the debtor owned and operated an office building, on which the debtor's lender held a mortgage and assignment of rents as security for repayment of a loan. Jason Realty, 59 F.3d at 425.  The language of the assignment of rents agreement assigned the rents, income, and profits from the property to the lender, but granted the debtor the privilege to collect the rents until the event of a default.  Id.  The issue was whether the assignment of rents was an absolute assignment, which would result in the rents belonging to the lender, or a collateral pledge, which would mean the rents were security for the loan and owned by the debtor.  Id.  The Third Circuit held that, under New Jersey law, the assignment vested the Bank

---

[3] Further, another Third Circuit case applying Pennsylvania law, which is a title state like Alabama (see Baxter v. South Trust Bank of Dothan, 584 So.2d 801, 804 (Ala. 1991)), reached an identical result to that of New Jersey.  In Commerce Bank, supra, the Third Circuit found that, under Pennsylvania law, it was "clear" that the banks were legally entitled to take the steps they did when the Debtor was unable to cure the default.  Id.  Therefore, the rents were not property of the Debtor's estate and were not available for use in a plan of reorganization.  Id.; see also In re Robin Assocs., 275 B.R. 218, 220-21 (W.D. Pa. 2001) (finding that assignment-of-rents clauses in pre-petition loan documents, together with lender's pre-petition enforcement thereof, prevented debtor from claiming an ownership interest in the rents); In re Robert E. Wright, Sr., Case No. 05-42859-TBB7, Docket No. 74 (Bankr. N.D. Ala. Dec. 20, 2005), aff'd, Robert E. Wright, Sr. V. Regions Bank, Case No. 1:06-cv-00518-JFG, Docket No. 10 (N.D. Ala. May 16, 2006).

ME1 9795075v.1

with title to the rents and granted the Debtor a license to the collect the rents until default.  <u>Id.</u> at 427-29.  Upon default, the Debtor had no interest in the rents.  <u>Id.</u> at  428-29.  Accordingly, the rents were not property of the bankruptcy estate under 11 U.S.C. §541(a)(1), and were not available to the Debtor as cash collateral or as a source for the Debtor's reorganization plan.  <u>Id.</u> at 429-30.

38.  The rents and other income derived from the Mortgaged Premises do not constitute property of the estate under section 541(a)(1) of the Bankruptcy Code.  They are absolute assignments under the applicable state law that transferred title to the Rents pre-petition. <u>See In re Jason Realty, L.P.</u>, 59 F.3d 423, 427 (3d Cir. 1995).  The Debtor has no interest in the Rents or other revenues from the Mortgaged Premises and such monies belong to the Agent.

39. The Debtor states in its Motion that "[c]ourts generally hold that an assignment of rents grants a security interest only, even where it contains language providing that the assignment of rents is absolute" and cites to four cases in support of this position.  Each of these cases, however, clearly stated that the law of the state in which the property is located controls, and none of these cases involved New Jersey law.  <u>See</u> <u>In re Guardian Realty Group, LLC</u>, 205 B.R. 1, 4-5 (Bankr. D.D.C. 1997) ("The properties are located in Delaware and the court is required to recognize any property rights which may have been created by the mortgage under Delaware law."); <u>In re Bethesda Air Rights Ltd P'ship</u>, 117 B.R. 202,208 (Bankr. D. Md. 1990)("The subject assignment is of rents from a Maryland property by a Maryland debtor in connection with a loan secured by the Maryland property. Therefore, Maryland law governs the Lender's substantive rights against the Debtor."); <u>In re Allen</u>, 357 B.R. 103, 111-13 (Bankr. S.D. Tex. 2006) (Stating that the "[s]tate law governs the creation, definition, and perfection of property rights and security interests that are applied in bankruptcy cases", in applying the law of

ME1 9795075v.1

Texas.); and <u>In re McCann</u>, 140 B.R. 926 (Bankr. D. Mass. 1992) ("The properties are located in Ohio and the law of that state must be consulted as to the effect of the assignments").  These cases are simply inapposite because question of whether an assignment of rents is absolute turns on the law of the state where the property is located, and none of these cases construe the law of the State of New Jersey.

40.   There is no dispute that the Debtor is and has been in default for almost a year, and that the matured loan has not been paid.  The Debtor cites no authority to call into question the fact that the Assignments of Rents are absolute assignments under New Jersey law, and on that basis the motion should be denied.

## II.   **THE DEBTOR HAS NO INTEREST IN THE RENTS EVEN IF THE ASSIGNMENT IS NOT ABSOLUTE BECAUSE THE AGENT EXERCISED ITS RIGHTS PREPETITION AND HAS BEEN COLLECTING THE RENTS DIRECTLY FOR ALMOST A YEAR**

41. The Debtor relies upon two Alabama opinions to support its position that if the applicable language in an assignment of rents is clear that it only creates a security interest then it will be treated as a security interest and the rents will constitute cash collateral.  <u>See</u> <u>In re Turtle Creek, Ltd.</u>, 194 B.R. 267 (Bankr. N.D. Ala. 1996); <u>Gulf Life Ins. Co. v. Wal-Mart Stores</u>, 972 F. Supp. 575, 588 (M.D. Ala. 1997), <u>vacated by</u> 156 F.3d 186 (11th Cir. Ala. 1998).   Even assuming that Alabama law were applied, these two cases are inapplicable to the facts of the present case.

42. In <u>Turtle Creek</u>, the Court applied what has come to be known as the "additional action rule," which requires that a mortgagee "take an additional step such as foreclosure, sequestration of rents, or by having a receiver appointed to collect the rents, or some similar action in order to perfect a lien in rents generated by a mortgagor's property in Alabama."  <u>Turtle Creek</u>, 194 B.R. at 278.  This additional step is only required, however, in the case of a collateral

15

or conditional assignment. The Assignments of Rents at issue here are absolute and unconditional on the face of the documents. Similarly, in Gulf Life Ins. Co. v. Wal-Mart Stores, which was reversed and vacated by the 11th Circuit in 1998 without opinion., the court found that the assignment was "one of collateral assignment of security, than one of absolute assignment of a present interest" and that the lender "did not invoke the assignment because it never gave proper notice … of its election to collect rents under the assignment, nor did it take any other action that would perfect its right during the time period in question". See Gulf Life Ins. Co., 972 F. Supp. at 588. Even assuming that Gulf Life is still good law, the District Court's holding that the assignee did not properly perfect its rights under a collateral assignment similarly renders the case inapplicable under these facts.

43. Even if the Assignments of Rents executed by the Debtor are considered collateral or conditional assignments, however, and even if Alabama law controlled, the Agent has undeniably taken the "additional" step necessary to perfect its interest and make the Assignments of Rents absolute. Notably absent from the Debtor's papers is any reference to the opinion of the Alabama Supreme Court directly addressing the issue of perfection of rights in rents under an assignment of rents agreement. HomeCorp v. Secor Bank, 659 So. 2d. 15, 16 (Ala. 1995). In HomeCorp., the debtor designated HomeCorp as its agent to manage the apartments. The mortgage contained an assignment of rents clause contingent only upon the existence of a default. Id. at 18. When the debtor defaulted, the lender sent a notice to the debtor and its agent demanding payment of the rent and giving notice not to pay the rents to anyone except the lender. Id. at 16. The court held that, as a result of the lender's notices, the assignment of rents to the lender became absolute[4]. Id. at 20. The Alabama Supreme Court affirmed the trial court's

---

[4] The trial court in HomeCorp. discussed an earlier Alabama Supreme Court decision on this issue, Zeidman v. Homestead Savings & Mortgage Co., 129 So. 281 (1930). In Zeidman, the Court also held that active intervention

ME1 9795075v.1

decision.  Id.  It is therefore clear under Alabama law that notice to the tenants suffices for an assignee to perfect its interest in rents and deprive the assignee of any residual interest.

44.  The Debtor glosses over the fact that the Agent long ago provided notice to the tenants to direct rent payments to the Agent.  Not only did the Agent notify the tenants, but it intercepted and commenced collecting the Rents, and has continued to collect the Rents for almost a year.  The Rents are deposited into an account in the Agent's name.  Furthermore, the Debtor has acknowledged the Agent's ownership interest, consented to the deposit into an account in the Agent's name, and agreed that the Agent can and should collect the Rents pursuant to the Assignments of Rents.  Finally, the Agent has taken the additional step of filing a foreclosure complaint against the Debtor.

45. The Agent has done everything possible to perfect its interest in the Rents, and has clearly done so under Alabama law.  If the Court applies the "additional action" rule, the Agent has perfected its interest in the Rents by noticing the tenants and collecting the Rents since May 2009.  See e.g. In re Gotta, 47 Bankr. 198 (Bankr. W.D. Wis. 1985) (holding that Wisconsin law requires possession or appointment of a receiver for perfection of an assignment of rents); In re Turtle Creek, Ltd., 194 B.R. 267 (Bankr. N.D. Ala. 1996) (additional action such as notice or foreclosure required); Gulf Life Ins. Co. v. Wal-Mart Stores, 972 F. Supp. 575, 588 (M.D. Ala. 1997), rev. and vacated at 156 F.3d 186 (11th Cir. Ala. 1998) (additional action such as proper notice to tenants required).  Under the law of these cases, the Debtor has no interest in the Rents because of the many actions taken by the Agent to protect and perfect its rights.  Such monies do not constitute cash collateral pursuant to section 363(a) of the Bankruptcy Code and accordingly

---

by a mortgagee by notice to the tenant or mortgagor is sufficient to establish the mortgagee's absolute right to rents. Zeidman, 129 So.2d 281.

ME1 9795075v.1

the motion should be denied.  See MacArthur Executive Assoc. v. State Farm Life Ins. Co., 190 B.R. 189, 195 (D.N.J. 1995).

46.  If this Court determines not to apply the law of the situs of the property (New Jersey law), however, it bears noting that the trend is away from the "additional action rule" in favor of what has been referred to as "the modern rule."  The "modern rule" requires that the assignment be recorded in order for the assignee's interest to be perfected.  This rule provides the benefit of uniformity and ensures adequate and equal notice of the parties' rights.  As set forth above, the Assignments of Rents at issue herein were properly recorded in the county in which the property is located.  The Agent has therefore perfected its interest in the Rents under the laws of courts that follow the "modern rule" as well.  See Old Stone Bank v. Tycon I Bldg. Ltd. Partnership, 946 F.2d 271, 272 (4th Cir. 1991) ("[P]erfection of an interest in rents under Virginia law is accomplished by recording the agreement that contains the assignment of rents provision."); Midlantic Nat'l Bank v. Sourlis, 141 B.R. 826 (D.N.J. 1992) ("[A]n assignment of rents as security for a mortgage loan provides a mortgagee with a perfected security interest in the rents as of the date of proper state-law recordation."); Commerce Bank v. Mountain View Village, Inc., 5 F.3d 34, 37 (3d Cir. 1993) (The mortgagee's lien in rents and profits under an instrument of assignment attaches and is perfected, for Bankruptcy Code purposes, at the moment of execution, delivery and recordation of the instrument.); In re River Village Assocs., 181 B.R. 795, 808 (E.D. Pa. 1995) ("[T]he Delaware Supreme Court would likely adopt the 'modern rule' that an assignment of rents would be perfected at the same time a security interest in the underlying property was perfected."); Indian Motorcycle Assocs. III Ltd. Partnership v. Massachusetts Hous. Fin. Agency, 66 F.3d 1246 (1st Cir. 1995); O'Neal Steel, Inc. v. E B Inc. (In re Millette), 186 B.R. 638, 642 (5th Cir. 1999).

ME1 9795075v.1

### III. EVEN IF THE RENTS ARE DEEMED CASH COLLATERAL, THE DEBTOR SHOULD BE PROHIBITED FROM USING SUCH MONIES PURSUANT TO 11 U.S.C. §363

47. As an initial matter, pursuant to Rule 4001(b)(2), a bankruptcy court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, however, a bankruptcy court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate on an interim basis pending a final hearing. See FED. R. BANKR. P. 4001(b)(2).

48. Generally, an application for the interim use of cash collateral should be accompanied by an affidavit showing that immediate and irreparable injury, loss or damage will result to the estate unless a debtor is authorized to use cash collateral before a final hearing, the amount of cash collateral being requested in order to avoid immediate and irreparable injury, and detail the adequate protection the Debtor proposes to offer to affected creditors. See id.

49. In its Cash Collateral Motion, the Debtor has failed to make the requisite showing required by Rule 4001(b)(2). The Debtor has not shown that irreparable injury will inure to the estate and in fact has not provided a budget.

50. Without more information it is difficult, if not impossible for this Court or affected creditors like the Agent to determine whether expenses are warranted. Accordingly, the Court should bar the Debtor from using any of the cash collateral until the Debtor provides a budget to the Court and the affected creditors.

51. Further, to the extent the Debtor claims that the Rents and other monies derived from the Mortgaged Premises constitute cash collateral, the Debtor is prohibited from using such monies. Pursuant to sections 363(c)(2) and (e) of the Bankruptcy Code, a creditor with an

ME1 9795075v.1

Case 10-02059-TBB11    Doc 21    Filed 04/05/10    Entered 04/05/10 21:01:38    Desc Main
Document      Page 19 of 22

interest in property is entitled to adequate protection for a debtor's use of cash collateral.  See

Midlantic Nat'l Bank v.Sourlis, 141 B.R. 826, 836 (D.N.J. 1992).

> Section 363(c)(2) balances competing interests in a Chapter 11 reorganization. As
> we have explained, a debtor reorganizing his business has a compelling need to
> use cash collateral in order to meet its daily operating expenses and rehabilitate its
> business.  In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019
> (11th Cir. 1984). At the same time, however, unhindered use of cash collateral,
> i.e., "secured 'property' may result in the dissipation of the estate." Id.  Section
> 363(c)(2) resolves this tension between a debtor and a secured creditor by only
> allowing the debtor to use cash collateral after it has procured either the secured
> creditor's or the bankruptcy court's permission upon a showing that the secured
> creditor's interest is adequately protected.  Id.

See Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.), 2010 U.S. App. LEXIS 5452

(11th Cir. Fla. Mar. 16, 2010).

52. If a creditor objects to a debtor's use of cash collateral then the Bankruptcy Court

"shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection

of such interest."  11 U.S.C. § 363(e).  The Agent is a creditor with an interest in the Rents.

Even assuming the Rents are considered cash collateral, the Agent is entitled to adequate

protection of its interests in the Mortgaged Premises.  At the very least, the rents should be

sequestered pending any consideration as to adequate protection.  Further, any use must be

conditioned upon the Debtor adhering to a budget that is acceptable to the Agent.  To date, no

budget has been presented for consideration.

## CONCLUSION

For the foregoing reasons, PNC Bank, National Association, individually and as

Administrative Agent for PNC Bank, National Association and Regions Bank, and Regions

Bank, individually,  respectfully request that the Court deny the Debtor's Motion for an Order

Pursuant to Sections 105(a), 361, 363, 541, and 542 of the Bankruptcy Code (I) Determining that

Rents Generated from the Debtor's Property Constitute Cash Collateral, (II) Authorizing the

ME1 9795075v.1

Debtor to Use Cash Collateral in the Ordinary Course of Business, (III) If Necessary, Granting Alternative Relief, and (IV) Scheduling a Final Hearing.

Dated this the 5th day of April, 2010

Respectfully Submitted,

/s/ Lisa S. Bonsall
Lisa S. Bonsall, Esq.
MCCARTER & ENGLISH, LLP
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102
Telephone: (973) 639-2066
Facsimile:  (973) 297-3849
lbonsall@mccarter.com

*Attorneys for PNC Bank, National Association, Individually and as Administrative Agent for PNC Bank, National Association and Regions Bank*

and

/s/ Jennifer Harris Henderson
Patrick Darby, Esq.
Glenn Glover, Esq.
Jennifer Harris Henderson, Esq.
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 521-8000
Facsimile:   (205) 521-8500
pdarby@babc.com
gglover@babc.com
jhenderson@babc.com

*Attorneys for Regions Bank, Individually*

ME1 9795075v.1

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I electronically filed the foregoing and the exhibits referenced therein and attached thereto with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties indicated on the electronic filing receipt. I hereby further certify that on April 5, 2010, I served the parties identified below by e-mail:

> Andre' M. Toffel
> Counsel for the Debtor
> Andre' M. Toffel, P.C.
> 1929 3rd Ave N
> 3rd Floor Farley Bldg
> Birmingham, AL 35203
> 205-252-7115
> Email: ATOFFEL@WWISP.COM
>
> Bankruptcy Administrator for the Northern District of Alabama (Birmingham)
> c/o Thomas Corbett
> 1800 5th Avenue North
> Suite 132
> Birmingham, AL 35203
> Thomas_Corbett@alnba.uscourts.gov

> /s/ Jennifer Harris Henderson
> Jennifer Harris Henderson, Esq.
> BRADLEY ARANT BOULT CUMMINGS LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, Alabama 35203
> Telephone: (205) 521-8000
> Facsimile: (205) 521-8500
> jhenderson@babc.com

22

ME1 9795075v.1