# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| **AIG BAKER DEPTFORD, L.L.C.** ) | |
| ) | Case No. 10-02059-TBB-11 |
| Debtor. ) | |
| ) | |

COUNTY OF ALLEGHENY : 
: SS.
COMMONWEALTH OF PENNSYLVANIA :

JOSEPH PASCARELLA, of full age, being duly sworn according to law, upon his oath deposes and says:

1. I am an Assistant Vice President of PNC Bank, National Association, as Administrative Agent for PNC Bank, National Association and Regions Bank (the "Agent" or "Plaintiff"). From my personal involvement in this matter and from my review of the Agent's records, I am fully familiar with the facts set forth in this Affidavit. I am authorized to make this Affidavit in support of the Agent's Objection to the Debtor's Motion for an Order Pursuant to Sections 105(a), 361, 363, 541, and 542 of the Bankruptcy Code (I) Determining that Rents Generated from the Debtor's Property Constitute Cash Collateral, (II) Authorizing the Debtor to Use Cash Collateral in the Ordinary Course of Business, (III) If Necessary, Granting Alternative Relief, and (IV) Scheduling a Final Hearing (the "Motion").

2. On or about November 14, 2006, the Agent made certain loans to AIG Baker Deptford, L.L.C. (the "Debtor") pursuant to a $38,867,862.00 Construction Loan Agreement dated November 14, 2006 (the "First Agreement"), which is evidenced by, inter alia, a certain Mortgage Note in the original principal amount of Twenty Three Million Eight Hundred and

ME1 9789627v.1

Sixty-Seven Thousand and Eight Hundred and Sixty-Two ($23,867,862) Dollars dated November 14, 2006, ("Note-1") and a certain Mortgage Note in the original principal amount of Fifteen Million ($15,000,000) Dollars dated November 14, 2006 ("Note-2"). True and correct copies of the First Agreement, Note-1 and Note-2 are attached hereto as <u>Exhibits A through C</u>.

3. On or about August 13, 2008, the Agent made a certain loans to the Debtor pursuant to a $2,001,094.00 Construction Loan Agreement dated August 13, 2008 (the "Second Agreement", and together with the First Agreement, the "Construction Loan Agreements"), which is evidenced by, <u>inter alia</u>, a certain Mortgage Note in the original principal amount of One Million Two Hundred and Twenty-Eight Thousand Eight Hundred and Thirty-One ($1,228,831.80) Dollars and 80/100 cents dated August 13, 2008, ("Note-3") and a certain Mortgage Note in the original principal amount of Seven Hundred and Seventy-Two Thousand Two Hundred and Sixty-Two ($772,262.20) Dollars and 20/100 cents dated August 13, 2008 ("Note-4", collectively, with Note-1, Note-2 and Note-3, the "Notes" and the Notes together with the Construction Loan Agreements, the "Loan Documents"). True and correct copies of the Second Agreement, Note-3 and Note-4 are attached hereto as <u>Exhibits D through F</u>.

4. To secure repayment of the Notes, the Debtor executed a Mortgage and Security Agreement dated November 14, 2006, in favor of the Agent ("Mortgage-1"), and thereby conveyed to the Agent in fee the real property described in the Mortgage and located at 2000 Clements Bridge Road, Deptford, Gloucester County, New Jersey (the "Mortgaged Premises"), which description is contained in Mortgage-1. Mortgage-1 was recorded in the Office of the Gloucester County Clerk. A copy of Mortgage-1 is attached as <u>Exhibit G</u>.

5. To secure repayment of the Notes, the Debtor also executed a Mortgage and Security Agreement dated August 13, 2008, in favor of the Agent ("Mortgage-2" and together

with Mortgage-1, the "Mortgages"), and thereby conveyed to the Agent in fee the Mortgaged Premises, which description is contained in Mortgage-2. Mortgage-2 was recorded in the Office of the Gloucester County Clerk. A copy of Mortgage-1 is attached as <u>Exhibit H</u>. By the terms of the Mortgages, the Debtor granted the Agent a security interest in certain personalty described therein (collectively, the "Collateral"). To perfect its interest in the Collateral, the Agent recorded UCC-1 Financing Statements (a) on January 30, 2007, with the Delaware Secretary of State as File Number 70418334 and (b) on November 16, 2006, with the Gloucester County Clerk, File No. 50871.

6. In connection with the Notes, the Debtor executed an Assignment of Rents, Leases and Profits dated November 14, 2006 ("Assignment of Rents-1") in favor of the Agent assigning and transferring to the Agent all of the Debtor's right, title and interest in and to all leases and similar arrangements encumbering the Mortgaged Premises, including the right to collect all rents, income and profits generated thereby (the "Rents"). Assignment of Rents-1 was recorded with the Gloucester County Clerk. A copy of the Assignment of Rents-1 is attached as <u>Exhibit I</u>.

7. In connection with the Notes, the Debtor executed an Assignment of Rents, Leases and Profits dated August 13, 2008 ("Assignment of Rents-2", and together with Assignment of Rents-1, the "Assignments of Rents") in favor of the Agent assigning and transferring to the Agent all of the Debtor's right, title and interest in and to all leases and similar arrangements encumbering the Mortgaged Premises, including the right to collect all rents, income and profits generated thereby (the "Rents"). Assignment of Rents-2 was recorded with the Gloucester County Clerk. A copy of the Assignment of Rents-2 is attached as <u>Exhibit J</u>.

8. The Agent is the present holder of the Notes and the Loan Documents.

9. The Debtor failed to meet its obligations under the Loan Documents by, inter alia: failing to timely make payments due pursuant to Section 3.8 of the Construction Loan Agreements in February, March, April, May, June, and July of 2009; in permitting construction liens to be filed against the Mortgaged Premises in violation of Section 10.1(j) of the Construction Loan Agreements; and failing to discharge, vacate or bond any construction lien within ten (10) days after the filing thereof, pursuant to Section 10.1(j) of the Construction Loan Agreements (collectively, the "Events of Default").

10. By letter dated March 10, 2009, the Agent notified the Debtor that, if default was not cured in five (5) days, all sums due under the Notes were immediately due and payable. The defaults were not cured within that time frame and became Events of Default. See Exhibit K.

11. By letter dated March 18, 2009, the Agent notified the Debtor that by reason of the Events of Default, all sums outstanding under the Loan Documents were immediately due and payable. Despite demand for payment and acceleration, the Debtor failed to pay all sums due under the Notes. See Exhibit L.

12. By letter to the Debtor's tenants dated May 13, 2009, the Agent gave notice to the tenants of the Agent's entitlement to the Rents (the "Letter to Tenants"). The Letter to Tenants notified the Debtor's tenants to direct and pay Rents to the Agent. See Exhibit M.

13. The Agent commenced collecting Rents.

14. The Debtor has continued to collect rent from some of the tenants in knowing violation of the termination of the Debtor's entitlement to collect the Rents.

15. On or about July 2, 2009, the Agent again made demand upon the Debtor for the immediate turnover to the Agent of all rents related to the Mortgaged Premises received by or in the possession of the Debtor since May 13, 2009. Demand was also made for an immediate

accounting of all rents received and the disposition of all such funds.  See Exhibit N.

16. The Debtor and the Agent then entered into a Forbearance Agreement dated August 2009.  See Exhibit O.

17. Pursuant to the Forbearance Agreement and the Loan Documents, the Debtor was required to pay the Loan in full on or before November 14, 2009 (the "Maturity Date").

18. The Debtor failed to pay the outstanding principal balance of the Loan and all unpaid interest accrued on the Loan and all other sums then owing under the Loan Documents in full on the Maturity Date.

19. The Forbearance Agreement terminated and the Debtor's failure timely to pay all sums by November 14, 2009 constitutes an additional Event of Default under the Loan Documents (the "Additional Default", together and collectively with the Events of Default, the "Default").

20. By letter dated November 17, 2009, the Agent notified the Debtor that the Forbearance Agreement terminated and the Debtor's failure timely to pay all sums by November 14, 2009 constitutes an additional Event of Default under the Loan Documents.  See Exhibit P.

21. Despite the termination of the Forbearance Agreement and the Events of Default, the Agent, without waiving any rights and remedies under the Loan Documents, continued to fund the Operating Account to pay for the operating expenses of the Debtor and continued to work with the Debtor towards a resolution.

22. On January 22, 2010, the Agent filed a Complaint with the Foreclosure Unit of the Superior Court of New Jersey, Docket No. GLO F-04241-10 and a Law Division Complaint with the Superior Court of New Jersey, Gloucester County, Docket No. GLO L-00160-10. See Exhibits Q & R.

23. Despite the filing of these complaints, the Agent, without waiving any rights and remedies under the Loan Documents, continued to fund the Operating Account to pay for the operating expenses of the Debtor.

JOSEPH PASCARELLA

Sworn and subscribed to
before me this 5 day of
April 2010.

*Tamara L Donato*

**COMMONWEALTH OF PENNSYLVANIA**
NOTARIAL SEAL
TAMARA L DONATO, NOTARY PUBLIC
CITY OF PITTSBURGH, ALLEGHENY COUNTY
MY COMMISSION EXPIRES NOV. 4, 2010

6